732 F.2d 1550
 BOCA MARA PROPERTIES, INC., Patrick T. O'Mara, Stephanie L.
O'Mara, and Herbert F. Ewald,
Plaintiffs-Appellees, Cross-Appellants,
v.
INTERNATIONAL DAIRY QUEEN, INC., American Dairy Queen
Corporation, Dairy Queen Financial, Inc., and
Dairy Queen Realty, Inc.,
Defendants-Appellants, Cross-Appellees.
 No. 82-5885.
 United States Court of Appeals,
Eleventh Circuit.
 May 29, 1984.
 
 William L. Killion, Minneapolis, Minn., for defendants-appellants, cross-appellees.
 Bennett Oppenheimer, Fort Lauderdale, Fla., Edna L. Caruso, West Palm Beach, Fla., for plaintiffs-appellees, cross-appellants.
 Appeals from the United States District Court for the Southern District of Florida.
 Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.
 RONEY, Circuit Judge:
 
 
 1
 This case involves the application of the Florida Franchise Act to the sale of a Dairy Queen store. Plaintiffs sued International Dairy Queen for common law fraud and misrepresentation in violation of the Florida statute. Dairy Queen counterclaimed seeking to recover moneys owed on the franchise account. The jury awarded plaintiffs $33,000 on the Florida Franchise Act claim and Dairy Queen $13,649 on its counterclaim. The court awarded plaintiffs $25,000 in attorney's fees. Both sides have appealed. We affirm.
 
 
 2
 Plaintiffs purchased a Dairy Queen store in Delray Beach, Florida from Martin Noble, a licensed Dairy Queen franchisee. Before purchasing the franchise, plaintiffs met with Noble to examine the store's financial records. Noble told them he was underreporting the store's gross sales both to Dairy Queen and to the Internal Revenue Service. He claimed that gross sales were $144,000 for the past year. Patrick O'Mara testified that Blaine Livingston, Dairy Queen's regional manager, confirmed the $144,000 figure, and told him that under proper management the store could earn an adequate income and that the store's future was bright.
 
 
 3
 After taking over the store, plaintiffs discovered that Noble had been selling items not authorized by Dairy Queen and had been using supplies not approved by Dairy Queen. Plaintiffs were told by a Dairy Queen representative that they would have to remove the unauthorized items from the menu. Because of declining sales, plaintiffs closed the store after operating it for one year. Livingston accepted the keys from the O'Maras and then changed the locks on the store.
 
 Florida Franchise Act
 
 4
 Dairy Queen presents four reasons why plaintiffs should not be allowed to recover under the Florida Franchise Act, Fla.Stat.Ann. Sec. 817.416: first, plaintiffs' store was not a "franchise" as defined by the Act; second, the Act only prohibits misrepresentations by the seller of the franchise and Noble was the seller, not Dairy Queen; third, the trial court misinstructed the jury on the question of the intent required by the Act; and fourth, the evidence was not sufficient to show a misrepresentation.
 
 
 5
 Is a Dairy Queen Store a Franchise? The Florida Franchise Act defines the term "franchise" as a contract "[w]herein the operation of the franchisee's business franchise is substantially reliant on franchisers for the basic supply of goods." Fla.Stat.Ann. Sec. 817.416(1)(b)(4).[1] Dairy Queen contends the business purchased by plaintiffs was not "substantially reliant" on it for the "basic supply of goods."
 
 
 6
 The operating agreement between Dairy Queen and its franchisees specifies that franchisees may sell only products approved by Dairy Queen. Although Dairy Queen does not directly supply these products, it has established a network of approved suppliers who package under the Dairy Queen label the ingredients necessary for the approved products. Franchisees are required to purchase their supplies from these suppliers. Dairy Queen can collect royalty fees by means of surcharges on the sales by these suppliers.
 
 
 7
 Despite this indirect method of supplying a franchisee, the business is substantially reliant on Dairy Queen for the basic supply of goods. The district court correctly held the business was a franchise under the Florida Franchise Act.
 
 
 8
 Persons Prohibited From Making Misrepresentations. Dairy Queen argues the Franchise Act prohibits misrepresentation by sellers, and that it did not sell the business to plaintiffs. Section 817.416(2)(a) of the Act provides:
 
 
 9
 (a) It is unlawful, when selling or establishing a franchise or distributorship, for any person:
 
 
 10
 1. Intentionally to misrepresent the prospects or chances for success of a proposed or existing franchise or distributorship.
 
 
 11
 The district court properly held that representations by Dairy Queen are covered by this section.
 
 
 12
 The statute makes it unlawful "for any person" to make intentional misrepresentations. Dairy Queen granted a license to Noble to establish a Dairy Queen store. A Dairy Queen licensee can only assign the franchise with Dairy Queen's approval. Dairy Queen approved Noble's sale and assignment to plaintiffs. A construction of Sec. 817.416(2)(a)(1) which would exclude a franchiser on these facts would not be in accord with the Florida statute's purpose of curbing overreaching by franchisers.
 
 
 13
 Jury Instructions. Read as a whole, the jury instructions fairly stated the law. The court charged the jury that the statute proscribes intentional misrepresentations.
 
 
 14
 Sufficiency of Evidence. The evidence was sufficient to support a jury verdict that Dairy Queen's regional manager Livingston misrepresented the prospects of the store selling only Dairy Queen products. The purchasers clearly relied on his statements that the store would provide immediate income, the store had earned $144,000 the past year, the income for the purchasers would be 8% of $144,000 if sales did not change, the prospects for success were bright, there were no problems with the store, and everything would be all right provided they managed the store properly.
 
 
 15
 The evidence would support a decision that Livingston knew that a portion of Noble's sales were from unauthorized products and these sales would have to be eliminated. Witness Turbert, a Dairy Queen inspector, testified that Noble had a substantial amount of "unauthorized merchandise." Although the evidence might be considered thin, it was enough to support a jury verdict. Neither the district court nor this Court on appeal should substitute its judgment for that of the jury on the evidence in this case.
 
 Cross-Appeal
 
 16
 As a defense to Dairy Queen's counterclaim for rent owed for several months after they vacated, plaintiffs contended that Dairy Queen took possession of the Delray Beach store for its own use when plaintiffs surrendered it. Plaintiffs argue the court erred in not presenting this issue to the jury. This argument is meritless. The sublease agreement which plaintiffs assumed provided that upon default by lessee, Dairy Queen could enter and repossess the premises and such reentry would not work "a forfeiture of rents to become due hereunder ..." The evidence showed that Dairy Queen received the keys to the store from Patrick O'Mara and then changed the locks. Dairy Queen continued to demand that plaintiffs pay rent up until the time when Dairy Queen relet the premises. No evidence was presented that Dairy Queen took possession of the Delray Beach store for its own use.
 
 Attorney's Fees
 
 17
 Dairy Queen contends that the district court's award of $25,000 attorney's fees to plaintiffs was excessive. The attorney's fees were awarded pursuant to the Florida Franchise Act. Fla.Stat.Ann. Sec. 817.416(3). Fee awards are discretionary under the Act. Dairy Queen has not convinced us that the district court's award was so large as to amount to an abuse of its discretion. Even though plaintiffs only recovered $33,000 on their substantive claim under the Franchise Act, the amount of recovery is "a factor, it is not of controlling significance" in determining an attorney's fee award. Commercial Union Insurance Co. v. Estate of Plute, 356 So.2d 54 (Fla.Dist.Ct.App.), cert. denied, 364 So.2d 883 (Fla.1978). Based on the affidavits submitted in this case, an award of $25,000 was within the district court's discretion.
 
 
 18
 Dairy Queen argues that the district court failed to separate the work involved in the statutory claim from work involved in the common law claim in figuring the amount of the award. Attorney's fees can be awarded for only that aspect of a case which relates to the statutory allowance of fees. Jackson v. Hatch, 288 So.2d 564, 566 (Fla.Dist.Ct.App.1974). When, however, one case involves several causes of action arising out of a single transaction or event, work spent on the different aspects of the case will inevitably overlap. In such an instance, an arbitrary reduction of a fee award based on the proportion of the total number of causes of action not entitled to attorney's fees is an abuse of discretion. LaFerney v. Scott Smith Oldsmobile, Inc., 410 So.2d 534, 536, (Fla.Dist.Ct.App.1982). There was considerable overlap between the common law fraud and the statutory claims. The district court did not abuse its discretion.
 
 
 19
 Plaintiffs have moved for attorney's fees on this appeal. Fla.Stat.Ann. Sec. 59.46(1) provides that "a statute ... providing for payment of attorney's fees to the prevailing party shall be construed to include the payment of attorney's fees to the prevailing party on appeal." Dairy Queen points out that this provision is discretionary and argues that nothing in the fact situation justifies an award of attorney's fees to plaintiffs. In view of the district court's award, however, in our judgment the plaintiffs, prevailing on this appeal, should receive some fee for legal services on appeal.
 
 
 20
 The motion is GRANTED. The attorneys are directed to settle the amount between themselves. In the absence of an agreement, appropriate affidavits may be submitted for decision by this Court as to the amount of attorney's fees to be awarded to plaintiffs.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Sec. 817.416(1)(b) & (c) provide:
 (b) The term "franchise or distributorship" means a contract or agreement, either expressed or implied, whether oral or written, between two or more persons:
 
 
 [1]
 Wherein a commercial relationship of definite duration or continuing indefinite duration is involved;
 
 
 [2]
 Wherein one party, hereinafter called the "franchisee," is granted the right to offer, sell, and distribute goods or services manufactured, processed, distributed or, in the case of services, organized and directed by another party;
 
 
 [3]
 Wherein the franchisee as an independent business constitutes a component of franchiser's distribution system; and
 
 
 [4]
 Wherein the operation of the franchisee's business franchise is substantially reliant on franchisers for the basic supply of goods
 (c) The term "goods" means any article or thing without limitation, or any part of such article or thing, including any article or thing used or consumed by a franchisee in rendering a service established, organized, directed, or approved by a franchiser.